Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

JS-6

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7428 | **DATE** | 9/6/2001 |
| **CASE TITLE** | MICHAEL MILJAN, et al vs. VILLAGE OF GRAYSLAKE, ILLINOIS, et a | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motions to dismiss are hereby granted [6-1 and 17-1] This case is dismissed without prejudice.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 07 2001 | 26 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP -7 AM 8:54 | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Miljan, d/b/a/ Lake County Sport'smen's Show, and Michael Miljan, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>Village of Grayslake, Illinois, a Municipal Corporation, Pat Carey, Individually, and in her official Capacity as Mayor of the Village of Grayslake, Illinois; Larry Herzog, Individually, and in his official capacity as Chief of Police of the Village of Grayslake, Illinois; Kevin McCory, Individually, and in his official capacity as Building Commissioner of the Village of Grayslake, Illinois; and Lake County Fair Association, Inc., an Illinois Corporation by David DeYoung, in his official capacity as President of the Lake County Fair Association, Inc., and Harry Dahms, Sr. in his official capacity as Secretary of the Lake County Fair Association, Inc.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 00 C 7428<br>Judge Ronald A. Guzman<br><br>**DOCKETED**<br>SEP 0 7 2001 |

## MEMORANDUM OPINION AND ORDER

Pending are Defendants Village of Grayslake's et al.'s and the Lake County Fair Association's motions to dismiss Plaintiff Michael Miljan's, d/b/a Lake County Sportsmen's Show and Michael Miljan, individually, complaint pursuant to Fed. R. Civ. P. 12(b)(1). For the

1

reasons set forth below these motions are granted.

## BACKGROUND FACTS

Plaintiff, operator of the Lake County Sportsmen's Show ("LCSS"), filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his equal protection rights, procedural due process, substantive due process, first amendment right to freedom of speech, including commercial speech, political speech and violation of the right to assemble. Plaintiff has operated the LCSS for approximately 20 years. In 1996, Grayslake annexed the Fairground property. As part of the annexation process Grayslake and the Lake County Fair Association (Fair Association) entered into the Conditions and Specifications Agreement (Agreement), where Grayslake agreed to issue a special use permit to the Fair Association to continue to operate the property as a fairground despite the fact that such a use was contrary to the Village of Grayslake Zoning Ordinance. The Agreement expressly provided that the Fair Association would be granted temporary use permits subject to the express terms of the face of the permit. The LCSS temporary use permit for October 2000 outlined Graylake's restrictions and also indicated that Grayslake may impose additional future restrictions on the LCSS.

After annexation, Grayslake issued temporary use permits to Plaintiff, through the Fair Association, to conduct the LCSS at the Fairgrounds. However, the temporary use permits were expressly subject to Grayslake's regulations on exhibitors and attendees. During the LCSS, Grayslake imposed the following requirements on the LCSS exhibitors and attendees. Exhibitors had to disable the weapons by placing a cable through the weapon, display the weapons in locked display cases, or place trigger locks on the weapons. Exhibitors had to abide by federal and state firearms laws regarding the sale of weapons and ammunition. Attendees were required to check or

disable weapons upon entrance to the gun show. Loaded weapons were prohibited.

During the September, 17, 2000 LCSS show, a Grayslake law enforcement investigation found violations of Grayslake regulations of the temporary use permit, including lack of LCSS personnel to check in weapons at the Fairground entrance and unsecured weapons on display. Following the September 17, 2000 show, the Village, through Kevin McCrory, Building Commissioner, notified Plaintiff of the violations via letter. Additionally, Commissioner McCrory's letter indicated the Village would give the LCSS a final chance, but the Commissioner listed further regulations that the LCSS must comply with in order to receive temporary use permits for the LCSS. These additional regulations included a check out procedure for all attendees, and required any gun thefts during a show be reported to the Village of Grayslake Police Department.

At the October 2000 LCSS show, Village law enforcement discovered further violations of the conditions of the temporary use permit including unsecured and loaded firearms and the sale of ammunition in violation of 410 Ill. Comp. Stat. Ann § 65/2, which prohibits the sale of ammunition to a person without a valid Illinois F.O.I.D. card. In a letter dated October 27, 2000, Commissioner McCory, suspended the LCSS temporary use permit for 60 days, and indicated Grayslake was reviewing the violations and considering implementing further regulations of the LCSS show.

On January 3, 2001, Commissioner McCrory wrote Miljan and indicated Grayslake had completed its review of the LCSS temporary use permits. The Commissioner indicated Grayslake would accept applications for future LCSS temporary use permits but with additional regulations. The regulations included:

3

firearms will be permitted in only one building; all attendees shall check in and receive a receipt for weapons and ammunition; upon exiting, all attendees will present a receipt for firearms, either from a vendor or from the entrance to the show; the operator is required to provide video taping of the entrance and exit as well as the location of the firearms display; and the entrance will be equipped with a metal detector and staffed by the LCSS manager or a representative.

## DISCUSSION

Defendants argues Plaintiff's case is not justiciable because the case is not ripe for decision. Defendants base their assertion on the fact that Plaintiff has not, through the Lake County Fair Association, applied for a temporary use permit to conduct the LCSS at the Fairgrounds, nor has Defendant Grayslake made any final decision regarding the LCSS temporary use permits at the Fairgrounds.

The district court, when ruling on a motion to dismiss due to lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), must accept all well-pleaded facts as true and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co., v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Rueth v. U. S. Envtl. Prot. Agency*, 13 F.3d 227, 229 (7th Cir. 1993). Yet, the district court may look beyond the jurisdictional allegations of the complaint to determine whether subject matter jurisdiction does in fact exist. *Capitol Leasing Co.*, 999 F.2d at 191. The burden of proof is on the plaintiff to prove that jurisdiction does in fact exist. *Friend v. Ancillia Sys. Inc.*, 68 F. Supp. 2d 969, 971 (N.D. Ill. 1999); see *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F. 3d 231, 236 (7th Cir. 1995) (holding the party invoking federal jurisdiction bears the burden of establishing the elements).

To determine whether a claim is ripe for federal judicial review the court must consider the "fitness of the issues for (adjudication)" and "the hardship to the parties (of)

withholding judicial consideration." *Ohio Forestry Ass'n., Inc. v. Sierra Club*, 523 U.S. 726, 722-23 (1998); see *Hartwood Inc. v. U. S. Forest Serv.*, 230 F. 3d 947, 952 (7th Cir. 2000). In *Ohio Forestry*, the Court delineated the following three ripeness factors: 1) whether the delayed judicial review would cause an undue hardship to the plaintiffs; 2) whether judicial intervention would interfere with administrative action; and 3) the fitness of the record for court resolution. *Ohio Forestry*, 523 U.S. at 733; *Hartwood*, 230 F.3d 947 at 952.

Regarding the first ripeness factor, whether delaying judicial review would cause the plaintiffs an undue hardship, Plaintiff's complaint fails. Undue hardship means that withholding judicial consideration would significantly affect a party's legal rights, or would practically impair the party's asserted interest. *Ohio Forestry*, 523 U.S. at 733. In *Ohio Forestry*, the U.S. Supreme Court ordered the Ohio District Court to dismiss the Sierra Club's complaint against the Forestry Service, as the Sierra Club would not suffer undue hardship. *Id.* The Court reasoned that withholding judicial intervention will not "create adverse affects of a strictly legal kind," as the legal rights of the parties would not change. *Id.* Additionally, the Court reasoned that practically, the Sierra Club was unaffected by the adoption of the Forest Service's development plan. *Id.* In *Ohio Forestry*, the Court ordered the Sierra Club's complaint against the Forestry Service dismissed because the plaintiffs would not suffer significant hardship by denying judicial review. *Id.* The Court reasoned that the adoption of the plan itself did not substantially affect the rights of the Sierra Club, where the actual acreage on which the logging was to occur was still undetermined. *Id.* Practically, the status of the parties had not yet changed as the Sierra Club's access to the forest land remained the same. *Id.*

In the present case, Plaintiff's legal status is not significantly altered by Grayslake's regulation of activities at the Lake County Fairgrounds per se. As to the November and December 2000 LCSS temporary use permits, first, Plaintiff has not presented evidence that Plaintiff has applied for the temporary use permits to conduct the November or December 2000 LCSS. Second, Plaintiff has not presented any evidence to rebut the temporary nature of Grayslake's imposition of a temporary suspension. As to the 2001 LCSS dates, Plaintiff has not presented other materials to indicate that he, on behalf of the LCSS, has in fact applied for the temporary use permits for the LCSS. Until such an application is made and the permit is either denied or issues with the additional regulations which plaintiff claims violate his rights, there is no actual controversy. The adoption of the proposed regulations itself did not substantially affect the rights of the plaintiff.

Regarding the second ripeness factor, Plaintiff's complaint fails as the judicial review at this point would interfere with local administrative remedies. In *Ohio Forestry*, the Court dismissed the Sierra Club's complaint because the NEPA and NFMA enabled the Forestry Service to not only develop a forestry management plan but also to make a final decision regarding the logging location and administer the process by which affected persons challenge the plan. 523 U.S. at 735. Recall that in Plaintiff's complaint, he complains not only that Grayslake has prohibited the LCSS at the Lake County Fairgrounds for 2001 dates, but also for the November and December 2000 dates. Regarding the November and December 2000 LCSS, the pleadings and the affidavits indicate that Grayslake made no final decision prohibiting the LCSS; instead Grayslake suspended the LCSS temporary use permits and reviewed past incidents at the LCSS to assess what modifications of the safety measures would be imposed at future shows. This period of time then, was apparently spent reviewing and formulating new policies and regulations. For

the court to interfere at that point, with no showing that the temporary suspension was nothing more than that, a temporary suspension, would be to interfere with the administrative action. Regarding the 2001 LCSS, the pleadings and affidavits indicate that Plaintiff has not, in fact, applied for a temporary use permit for any of the 2001 dates, despite the fact that Plaintiff and the Lake County Fairground Association entered into a lease agreement for the 2001 LCSS dates. Pursuant to the Agreement between Grayslake and the Lake County Fair Association, the issuance of temporary use permits, is a zoning function: "temporary uses shall only be permitted in accordance with Section 22.09F of the Village Zoning Ordinance, and upon a determination by Grayslake that the temporary event, as proposed, will not pose any material risk to the public health, safety, or welfare..." (Agreement p. 5). In Illinois, the Zoning Board of Appeals has authority to make final decisions over decisions of a municipal officer, department, board, or bureau of the municipality. 65 Ill. Comp. Stat. Ann. § 5/11-13-12 (West 2000); see *Monahan v. Hinsdale*, 569 N.E.2d 1182, 1185, 210 Ill. App. 3d 985, 991 (Ill. App. Ct. 1991). Plaintiff has never sought review of McCory's decision to the Zoning Board of Appeals and has failed to set forth any facts as to the futility of such. Plaintiff's claims that the Mayor has a "personal agenda to eliminate gun shows" is insufficient to support a futility argument. Therefore, judicial interference at this point would interfere with local administrative remedies.

Regarding the third ripeness factor, whether the record is fit for judicial review, Miljan's argument also fails. In *Ohio Forestry*, the Court noted that the record, as presented, dealt with abstract conceptions, and the facts need to be fleshed out. *Ohio Forestry*, 523 U.S. at 736-37. In the present case, Plaintiff's complaint and supporting deposition testimony do not establish factually how Defendant Grayslake will handle the LCSS future temporary use permit

applications, nor the actual effect on plaintiff of any such future actions. Therefore, the record in this case is not fit for judicial review, and Plaintiff's case is not ripe for consideration.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are hereby granted (#6-1 & #17-1). This case is dismissed without prejudice.

SO ORDERED  9-6-01

ENTERED:

*Ronald A. Guzman*

HON. RONALD A. GUZMAN
United States Judge